395 P.2d 712

**GRAVER TANK & MANUFACTURING COMPANY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and Zola Forrest, Respondents.**

No. 8216.

Supreme Court of Arizona.

In Division.

Oct. 14, 1964.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for petitioner.

Richard J. Daniels, Phoenix, for The Industrial Commission of Arizona.

Minne & Sorenson, by George Sorenson and Joe Contreras, Phoenix, for respondent Zola Forrest.

UDALL, Chief Justice.

This case is before us on certiorari from an order of the Industrial Commission of Arizona awarding death benefits to the widow of a decedent employee. It arose from the filing of an application for death benefits with the Industrial Commission by Zola Forrest, widow of Russell M. Forrest, alleging his death on May 14, 1962, was the proximate result of an injury he received on March 24, 1962, while in the employ of petitioner. Petitioner was engaged in the construction of Titan II missile sites, and employed decedent as a boilermaker.

The record before us indicates that during his lifetime decedent filed his application for workman's compensation, in which he described the accident as follows:

"Was working on a missile base door helping weld on strong backs to hold door sections in place. Welding smoke and fumes from a welding rod made me sick. I got hot and cold spells and couldn't hardly talk."

He was hospitalized the day of this occurrence under the care of Doctors F. Gary Bivings and James E. O'Hara who found him to be suffering from chemical pneumonitis. Complications set in, necessitating the surgical removal of a portion of his right lung. Before the Industrial Commission made a determination as to the validity of his claim he died and his widow then filed her claim for death benefits. The Industrial Commission secured reports from the aforementioned physicians and also from Dr. Ralph H. Fuller who performed the autopsy.

On September 19, 1962, the Industrial Commission found that the death resulted from the described injury and accepted liability. Petitioner protested the award and filed for a rehearing asserting that the death resulted from natural causes. Two hearings were held in which five medical and five lay witnesses testified. The lay testimony indicated that on the day in question decedent was working as a fitter and as such was helping a welder attach strong backs to silo doors. These strong backs are heavy metal supports which decedent held in place until a tack weld was applied. As of necessity he was required to work in close proximity to the welding operation and was thereby exposed to smoke and fumes from the same. No eye witnesses testified to the actual incident in question but decedent's recitation of the circumstances to fellow employees shortly

after he was stricken, and to his attending physicians as part of the history they obtained, are in the record. These statements were essentially the same as the description of the accident decedent set out in his original application.

Decedent's exposure to the welding smoke and fumes was not disputed although a question was raised as to whether he suffered such exposure while working inside or outside of a tank. Nevertheless, the two attending physicians testified at the rehearing to the effect that the inhalation of toxic material, such as the smoke and fumes, brought on the chemical pneumonitis which resulted in his death approximately seven weeks later. Their opinions were supported by the physician who conducted the autopsy, Dr. Ralph H. Fuller.

Two other medical experts testified at the rehearing, Dr. Thomas Jarvis, a pathologist, and Dr. Robert McCarver, a radiologist. In their opinions no causal relationship existed between the exposure and the death, as they felt the pneumonitis was bacterial in origin disassociated from any inhalation of smoke and fumes.

Upon completion of the rehearing the referee submitted his report in which he concluded that there was no causal relationship between decedent's exposure to welding fumes and his death. He recommended that the commission rescind its previous order of acceptance of liability and that the claim

for death benefits be denied. The following day the commission again considered the claim and affirmed its previous order, rejecting the referee's recommendation. The employer then filed for rehearing asking the commission to reconsider its order based on the evidence in the record. This application was denied and employer petitioned to this Court for a review by way of certiorari pursuant to A.R.S. § 23–951.

■ Where an application for death benefits under the Workmens' Compensation Law is made, it is incumbent upon the claimant to show affirmatively, to the satisfaction of the commission, sitting as triers of the fact, (a) that there was an accident arising out of and in the course of employment; (b) that the deceased was injured thereby, and (c) that the injury was the cause of death. In re Mitchell, 61 Ariz. 436, 150 P.2d 355.

In determining whether an accident had occurred the commission had before it the original application of decedent for compensation, the testimony of several co-workers of decedent and the testimony of three physicians, all of which indicated that decedent became ill on March 24, 1962, by inhaling smoke and fumes from a welding operation he was assisting in. In the Mitchell case, supra, this Court said:

"While accidental injuries are usually sudden happenings and are caused by some violent or external means such as

a traumatic injury, not all accidents fall into such a mold, or such a strait-jacketed pattern. There is nothing in our statutory law, * * * that says an industrial accident must be an instantaneous happening or that violence need be a part thereof in order for a resulting injury to be compensable." 61 Ariz. at 451–452, 150 P.2d at 361.

This case involved the death of a telephone repairman as a result of inhaling carbon tetrachloride during the course of his employment while working in a poorly ventilated place. It was held that there was an injury by accident within the meaning of our Workmen's Compensation Law, "in that the inhalation by the deceased of the fumes * * * produced effects that were not intended, foreseen or expected. This was an unlooked for mishap, an unexpected, unusual and extraordinary event not contemplated as a part of normal conditions of employment." 61 Ariz. at 452–453, 150 P.2d at 361. The same can be said for the facts of the case at bar.

In an earlier decision it was held that an exposure to sewer gas in sufficient quantity to render a sewer workman unconscious was an accident even though he was continually exposed to such gas in small quantities. Dauber v. City of Phoenix, 59 Ariz. 489, 130 P.2d 56. Likewise we held that a workman who became ill and was hospitalized for pneumonia after operating a tractor with a defective exhaust system and cracked cylinder head, was the victim of an accident. Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600. It was pointed out in that opinion that:

"The terms 'disease' and 'accident' are no longer considered mutually exclusive. Any disease is compensable under our statute which follows as a natural consequence of any injury which has qualified independently as accidental. The injury embraces all the results which flow directly from it. The disease of pneumonia contracted by petitioner in this case flows directly from the unusual and unexpected conditions surrounding his employment, i. e. the defective tractor. It is traceable to a definite time and place. We hold the disease of pneumonia to be an accidental result of a combination of unusual circumstances and that therefore it is compensable." 90 Ariz. at 8, 363 P.2d at 603.

It is our conclusion that the unexpected result of decedent's exposure to smoke and fumes constituted an accident in spite of the fact that the evidence does not affirmatively show that this exposure was different in any respect from that to which he was subjected in the normal course of his duties.

Based upon the above reasoning we find the first two assignments of error to be groundless. In the first assignment petitioner claims the evidence before the commission showed the death resulted solely

from a disease, pneumonia, and there was no evidence that the disease resulted from an injury arising out of and occurring in the course of his employment. Closely allied with this is the second assigned error that the commission disregarded the definition found in A.R.S. § 23-901, subsection 8, which reads in pertinent part as follows:

"8. 'Personal injury by accident arising out of, and in the course of employment' * * * does not include a disease unless resulting from injury."

Turning to the next required element, i. e. proof that decedent was injured by such accident, we find that no serious question is presented. The testimony of the two attending physicians clearly indicate the exposure caused him to be afflicted with chemical pneumonitis, although Doctors Jarvis and McCarver disagree.

Regarding the requirement of a showing that the injury was the cause of death we find that the medical testimony is in conflict. The two attending physicians indicated that the decedent never recovered from the chemical pneumonitis. It was alleviated somewhat after about ten days of hospitalization, enough so that he left the hospital, but a recurrence of the condition necessitated the removal of the lower lobe of his right lung on May 1, 1962. An air leak developed on the raw surface of the right lung resulting in a pneumothorax. The necropsy report of the pathologist, Dr. Fuller, sets forth the cause of death as follows:

"Cause of Death: Peculiarly persistent tracheitis, bronchitis, bronchiolitis, and lobar pneumonia becoming confluent and exhibiting a tendency to become organized, cause undetermined, but conceivably resulting from inhalation of fumes (industrial hazard); associated visceral evidences ('cloudy swelling, etc.') of toxemia."

In his testimony on rehearing Dr. Fuller was asked if he agreed with the two attending physicians when they testified that the condition which ultimately caused or brought about decedent's death was precipitated or caused by chemical pneumonitis. He stated he did not disagree with them and explained his difficulty was that he couldn't prove that they were right.

■ While petitioner presented the testimony of two qualified expert medical witnesses who had reviewed the record and expressed opinions contrary to the other three physicians the commission decided this question in favor of respondent. As we have said many times, when there is a conflict in expert medical testimony we will not substitute our opinion for that of the Commission where the Commission has reasonably resolved such a conflict. Southwest Forest Industries, Inc. v. Industrial Commission, 96 Ariz. 91, 392 P.2d 506; Renteria v. Industrial Commission, 94 Ariz. 348, 385 P.2d 223.

■ Petitioner further assigns as error the Commission's action in rejecting specific

findings and recommendations made by its referee for the reason that such report was implicit in its terms and no written objections to it were filed as permitted by a commission rule. In the early case of Johnson v. T. B. Stewart Const. Co., 37 Ariz. 250, 293 P. 20, the practice of appointing referees to take testimony was upheld, "but that such agents' recommendations shall be advisory only." The duty to make the determination was that of the Industrial Commission itself, and the fact that they disagreed with their referee is of no legal consequence. The mere fact that one of the commission's regulations allows for the filing of written objections to an unfavorable referee's report does not bind the commission to the referee's conclusion where no objections are made to such report.

The last assignment of error alleges that the commission's findings are so vague the parties cannot determine from the record what evidence the commission relied on in making its award. The order complained of reads as follows:

"1. That Russell M. Forrest, deceased, did die as a result of injury sustained March 24, 1962, and that the injury caused and contributed to the death of Russell M. Forrest."

In support of this assignment petitioner cites the case of Schnatzmeyer v. Industrial Commission, 77 Ariz. 266, 270 P.2d 794.

That decision is clearly distinguishable from the case at bar in that the order complained of contained two findings, which, when read together, were ambiguous. This is not the case here. The above-quoted order is very concise and clearly conveys the finding that the deceased died as a proximate result of an injury arising out of and occurring in the course of his employment.

Award affirmed.

BERNSTEIN and SCRUGGS, JJ., concur.