424 P.2d 451

Jesus Jose **FERNANDEZ**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona
and Kennecott Copper Corpora-
tion, Respondents.

**No. 8900–PR.**

Supreme Court of Arizona.

In Banc.

March 1, 1967.

Stephen S. Gorey, Phoenix, for petition-
er.

Robert D. Steckner, Phoenix, for re-
spondent Industrial Commission. Robert
K. Park, Glen D. Webster, Dee-Dee Samet,
Spencer K. Johnston, Joyce Volts, Arthur
B. Parsons, Jr., Noel J. R. Levy, Donald
L. Cross, Lawrence J. Sandell, Phoenix, of
counsel.

Fennemore, Craig, Allen & McClennen,
by John J. O'Connor III, Phoenix, for re-
spondent Kennecott Copper Corp.

McFARLAND, Justice:

Jesus Jose Fernandez, hereinafter referred to as petitioner, has petitioned for and been granted review of the case of Fernandez v. Industrial Commission et al., Court of Appeals of Arizona, 1 CA–IC 93, reported in 4 Ariz.App. 281, 419 P.2d 542 (November 1, 1966); supp. op., 4 Ariz.App. 445, 421 P.2d 341 (December 9, 1966).

At the time this claim arose, petitioner was employed by Kennecott Copper Co., hereinafter referred to as employer. On January 28, 1961, petitioner injured his back while unloading scrap iron from a truck. The claim was declared compensable by order of the industrial commission, and surgery was performed. On April 5, 1962, an award was made by the commission finding petitioner to have suffered a fifteen per cent disability and no loss of earning capacity. After several petitions for rehearing and reopening, the case was reopened in March of 1963, more surgery was performed, and a number of medical and administrative procedures were undergone, including examinations, consultations, hearing, etc. On November 5, 1964, the commission rendered a decision upon rehearing awarding benefits through September of 1963. This latter award was affirmed, and a petition for rehearing was denied on January 18, 1965.

On being advised by an employee of the industrial commission that he could either file a petition for reopening or apply for a writ of certiorari from the court of appeals, petitioner chose the former course and petitioned for reopening of his case. The commission then ordered that further investigation of the case be made, including an examination by a Spanish-speaking psychiatrist. The employer protested this action, and petitioned for a rehearing of the order providing for an examination.

On May 13, 1965, the commission considered the report of Dr. George E. Saravia, the psychiatrist who had examined petitioner pursuant to the order. The material portions of the report are as follows:

" * * * There is no question by the nature of they [sic] symptoms and the distribution of the pain (in addition, he complains of weakness in the left side of his body), that these are partly functional. However, they are incapacitating to the patient, and I cannot help but consider them a secondary development of the injury that he incurred in 1961, particularly as a result of the way he has been handled apparently with disregard to the 15% organic disability. I am sure this has caused a great deal of resentment which, in turn, has produced an emotional conflict which seems to have been expressed at least partly by his present symptoms. His functional symptoms fall in the diagnostic category of a Psychophysiological Muscular Skeletal Reaction with Conversion features.

"As to what to do from a psychiatric point of view is rather a difficult decision. Psychotherapy might be of some help, providing that there is a change of attitude on the part of the employers and that they be willing to help rehabilitate this man. I feel that he could still be rehabilitated in spite of the long duration of his symptoms. However, I must say that the prognosis should be considered guarded and I am sure that treatment would prove to be quite difficult."

Thereupon, the commission found that petitioner had sustained new, additional, or previously undiscovered disability attributable to the original injury. An award was made granting benefits and compensation from February 9, 1965 (the date the petition for reopening was filed), until further order of the commission. The commission further found that its actions in ordering the psychiatric examination were warranted under the Rules of Procedure Before The Industrial Commission of Arizona, and affirmed that order.

The employer subsequently moved to vacate the order of May 13, 1965, and petitioned for a rehearing. A rehearing was granted, and Dr. Saravia testified and was cross-examined by counsel for employer. Petitioner was present, but unrepresented by counsel, and being unable to speak English, he participated very little in the proceedings.

In its decision on rehearing, dated November 30, 1965, the commission found (one member dissenting) that petitioner had no new, additional, or previously undiscovered disability due to the original injury. The findings and award of May 13, 1965, were therefore rescinded. An application for writ of certiorari followed, and the matter has now come before this court.

■ Respondent commission has submitted a "confession of error and request for remand," on the ground that although the commission itself raised the issue of psychiatric disability, it was not resolved by the findings included in any of the awards rendered in the case. We agree. In the case of Cammeron v. Industrial Commission, 98 Ariz. 366, 405 P.2d 802, 805, this court stated:

"* * * The findings did not mention mental disability, and although it is not essential under our statute that specific findings of fact be made on every issue which might be involved in a hearing, the findings as made must be of such a nature that they necessarily dispose of all the material issues involved. Sproul v. Industrial Commission, supra [91 Ariz. 128, 370 P.2d 279]; Foster v. Industrial Commission, 46 Ariz. 90, 47 P.2d 428 (1935). Under the facts of this case, the mental disability of the petitioner was a material issue and it was error for the Commission to refuse to make findings pertaining to this issue." 98 Ariz. at 371, 405 P.2d at 805

There are further reasons, however, which preclude the remand of this case in such a manner that the commission may rectify its error by the mere insertion of more specific findings to substantiate its ultimate finding of no new, additional, or previously undiscovered disability.

The grounds on which the reopening of the case was predicated, resulting in the now rescinded award of May 13, 1965, are to be found in Rule 64, Rules of Procedure Before The Industrial Commission of Arizona, which provides as follows:

"64. Application for Reopening or Readjustment of Claims:—Application for an increase or rearrangment of compensation or application for compensation based upon new, additional or previously undiscovered disability, or application or petition to reopen claim, shall be filed with the Commission in writing, setting forth facts and circumstances, and supported by a written report of a physician or surgeon, duly and regularly licensed to practice medicine and surgery in the State of Arizona, setting forth facts and circumstances in detail relating to the then physical condition of said applicant. "In the event the report of the physician or surgeon claims new, additional, or previously undiscovered disability, the Commission shall make further independent investigation, including medical examinations or laboratory work relating to the alleged physical condition of the applicant. Such application for compensation shall not be operative for any period prior to application therefor. Reasonable necessary medical examination and laboratory work expense shall be borne by the applicant. In the event the application is determined by the Commission to justify additional compensation or medical treatment, the Commission shall notify in writing all interested parties of its decision; and the applicant will be reimbursed for reasonable necessary medical examination and laboratory work expense which he has incurred, in accordance with the Commission's Medical, Dental, Hospital and Nursing Fee Schedule."

The application for reopening having been accepted by the commission, any question as to the sufficiency of its form under this rule has been waived. Therefore, our sole consideration at this time is to determine whether there was sufficient evidence in the record to substantiate the commission's finding on the rehearing of the petition to reopen that there was no new, additional, or previously undiscovered disability attributable to petitioner's injury. Bishop v. Industrial Commission, 94 Ariz. 65, 381 P.2d 598.

The evidence which had previously been before the commission, and which the majority of the commission relied upon in its finding, was a report by Dr. William B. McGrath, a psychiatrist who had examined petitioner on September 21, 1964. The pertinent portions of the report are as follows:

"The spread of symptoms to involve the left upper extremity suggests a conversion reaction. It does not result from the accident of January 28, 1961. But more likely from the conflict situation in which the patient finds himself. The conversion reaction itself does not appear to this examiner to be incapacitating. The only 'treatment' indicated is the resolution, if at all possible, of the conflict. The conflict seems rather an administrative than a psychiatric matter."

At the hearing, Dr. Saravia testified that petitioner's symptoms were basically the same at the time of his examination as at the time of the examination by Dr. McGrath. Dr. Saravia made this statement solely on the basis of the report of the prior examination, as he had personally examined petitioner only on the one occasion. Dr. Saravia modified this statement by adding that perhaps petitioner's symptoms were more exacerbated or intensified. He further testified as follows:

"* * * I felt he was almost totally incapacitated at the time when I saw him. Now you know psychiatry, we can't

demonstrate this on X ray; it's a matter also of subjective evaluation on my part. Now many of these backs I have seen in the Service that you judge the personality of the individual, how much perhaps they are consciously producing to obtain a gain, but this man is not obtaining a gain, his wife is almost ready to desert him. In other words, I got a feeling of sincerity that that was the way he felt, he wasn't putting on.

\*    \*    \*    \*    \*    \*

"Q  And he told you during the course of your examination in April that he had simply been unable to perform the job for some previous time, isn't that correct?

"A  That is correct. He told me that he was sent back to work November of 1964, and he told me that he must either report to work or be fired, and again he was not, according to his statement, placed as a boiler-maker's helper, but he was given a pick and shovel, and, as you see in my report, he had the symptoms within a few hours and then he felt much worse after this.

\*    \*    \*    \*    \*    \*

"Q  You stated that Mr. Fernandez' condition might have been more intense at the time you saw him; is there any way of your evaluating that increase?

"A  Let me modify that. Seems to me from what he told me his condition was more intense since he was sent back to work November of '64, from what he told me.

"Q  But not since January?

"A  No."

It must be noted from the foregoing testimony that Dr. Saravia's evidence differs from Dr. McGrath's report in two major respects. First, in that Dr. Saravia found petitioner was almost totally incapacitated for work, and, second, that he was in need of further treatments. Both agreed that the disability stemmed from the conflict situation arising from the accident. It is clear that the increased disability took

place in November, when petitioner was sent back to pick and shovel work after Dr. McGrath had examined him. This is not a case of conflicting evidence presented by opposing sides, and relating to the same fact situation. In the instant case, both doctors were chosen by the commission, and were reporting observations made several months apart.

■ The commission is not at liberty to disregard the undisputed evidence of a disinterested person. Lee v. Industrial Commission, 71 Ariz. 171, 224 P.2d 1085. This rule should be particularly adhered to in a case such as this—where petitioner is uneducated, mentally disturbed, does not understand the language, and is opposed by skillful and experienced counsel. The inference elicited by counsel that the intensification of the injury may have been in doubt does not refute the uncontradicted evidence that subsequent to Dr. McGrath's examination petitioner has become totally incapacitated for work.

■ For the foregoing reasons, we find the commission to have erred in its finding of "no new, additional, or previously undiscovered" disability. Accordingly, the award of November 30, 1965, must be set aside, leaving the award of May 13, 1965, in full force and effect.

In the proceedings on certiorari, several questions have been presented regarding problems which may arise under the rules and statutes governing the procedural conduct of The Industrial Commission of Arizona. As these questions are presented in a hypothetical form, unsupported by a factual basis, and have not been properly argued nor contested in the record before this court, we feel them to be an improper subject for determination on certiorari.

The opinion and supplemental opinion of the Court of Appeals are vacated, and the award is set aside.

BERNSTEIN, C. J., and STRUCK-MEYER, UDALL and LOCKWOOD, JJ., concur.