447 P.2d 239

Seferino VALDON, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Maricopa County Highway Department, Respondents.

No. 9206–PR.

Supreme Court of Arizona.

In Banc.

Nov. 20, 1968.

**548**

Donald J. Morgan, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondents.

BERNSTEIN, Justice.

In July of 1963, the claimant, Seferino Valdon, was employed by the Maricopa County Highway Department and injured in the course of his employment. Under the employment practices in effect at that time, Maricopa County employees were permitted to continue their employment until age 70, although eligible for retirement at 65.

Valdon was officially classified as an "Equipment Operator". However, he was in fact assigned to a crew which was painting highway traffic control stripes, and his duties included unloading cans of paint weighing up to 90 pounds per can from carload shipments, mixing the paint, dumping the paint into the striping machine, and stooping to pick up warning cones from the dry paint stripes while standing on the rear of a truck.

On July 29th, 1963, the claimant, who was then 65 years old, was injured when he tripped over a paint can and fell on his left hip. The record further shows that it was not until September 2, 1963, that claimant saw a doctor and he continued to work until September 23rd, a period of about two months following his accident. While the evidence of his co-workers showed that they helped him during this time, he continued to report daily for work.

Valdon's former supervisor testified:

"There is no one man affiliated to one job in our department. We are sort of called a jack-of-all trades, because our department, we are limited to personnel."

He further testified that all members of the crew must be in good physical condition, that he could not use Valdon as a member of the crew in Valdon's physical condition as of the date of the hearing for the reason that,

"Well, like I just mentioned, some of our type work calls for moving fast on the roads, and you can't string along. You have to move behind your striping machines, and especially on the intersection machines. I mean, you have to move at a pace to where you have to block traffic ahead of that machine, sort of—well, marking pavement you have your left-turn slots, your right-turn arrows, your left-turn arrows, all this is marking and bending over and moving fast, so that the striping machines can move through and lay out the work and block the intersection. * * *

"In various types of work you have to handle sacks of reflective ground glass that reflects the paint at night. You have to move them out of the truck by hand and get them as fast as you can to the machine whenever it runs out. You have to mix paint, you have to lift

up the buckets of paint after it is mixed with the thinner and put them in the machine. * * * It's a lot of physical work, yes, sir."

The claimant was described as a willing worker and not a malingerer. The record further evidences that Valdon had sustained five previous disabilities, including a residual 5% permanent disability to his left hand, a back injury, a left side injury, a combination injury and a left leg injury.

In October, 1963, the first report of the accident was filed with the Industrial Commission and numerous examinations and hearings followed.

On August 4, 1965, Decision upon Rehearing and Findings and Award was entered by the Industrial Commission that the claimant, sustained a personal injury on July 29, 1963, arising out of and in the course of his employment and awarded him total temporary disability from October 1, 1963, through May 16, 1964, and June 25, 1964, through February 15, 1965, in the sum of $2762.20. The Commission after lengthy hearings found that his condition had become stationary as of February 15, 1965, and they further found he was capable of resuming work. On November 22, 1965, Decision upon Rehearing was entered, affirming its Findings and Award order of August 4, 1965.

Counsel for the petitioner, Valdon, urges that "the Commission should have allowed an award to this worn out piece of human industrial equipment due to his multiple and disabling injuries." However, all of the medical testimony stated that claimant was no longer productive because of natural old age deterioration and not caused by any physical disability resulting from the accident.

The basic issue in this case is the weight to be given the medical testimony, and whether the Commission's finding that there was no loss of function or permanent disability is manifestly against the weight of the evidence.

Seven doctors testified, without exception, that they found no functional loss or disability attributable to the claimant's industrial accident, and this court held in Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197, that

" * * * the conclusion of the Medical Board is not contradicted by the medical testimony * * * it was not established affirmatively that the injury caused any disability."

Claimant argues that the Commission abused its discretion in overruling the findings of its referee.

This Court has repeatedly held that the recommendation of a referee is advisory only and has no legal effect. Powell v. Industrial Commission, 102 Ariz. 11, 423 P.2d 348; Aluminum Co. of America, on Behalf of Defense Plant Corporation v. Ind. Comm., 61 Ariz. 520, 152 P.2d 297; Graver Tank & Mfg. Co. v. Ind. Comm., 96 Ariz. 356, 395 P.2d 712.

A referee is only an appointed agent of the Industrial Commission and his authority is strictly limited by A.R.S. 23–928 subsec. B.

" * * * The recommendation made by such agent shall be advisory only and shall not preclude taking further evidence or making further investigations."

The Industrial Commission is solely responsible for its findings of fact and entering an award, and it cannot delegate away its jurisdiction which is granted by the legislature. The Industrial Commission has the duty to make the final determination regardless of the findings of its referee.

Claimant's further contention that the medical conclusions were not based upon information specifically within the realm of medical knowledge is contrary to the evidence in this case.

None of the medical testimony offered in this case is in conflict. Considering that there were numerous examinations conducted by seven doctors we are impressed with their unanimity.

We have consistently held that,

"And where the causal relationship between an industrial injury and the

resulting disability is 'within the singular knowledge of medical experts * * * their findings are conclusive upon the commission. * * * The commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science.'" Paulley v. Industrial Comm. of Ariz., 91 Ariz. 266, 371 P.2d 888 (1962)

We also must consider the evidence that the claimant continued working for almost two months following his accident, and did not see a doctor for over five weeks. In view of the testimony, supra, that this work required dexterity and great physical strength, there was sufficient evidence to support the Industrial Commission's findings and award from the medical testimony presented to them.

The petitioner has an affirmative burden of proving not only that the injury might have produced the disability, but that it did in fact produce it. Wheeler v. Ind. Comm., 94 Ariz. 199, 382 P.2d 675; Ocean Accident and Guarantee Corp. v. Ind. Comm. of Arizona, 32 Ariz. 265, 257 P. 641; Hunter v. William Peper Const. Co., 46 Ariz. 465, 52 P.2d 472; Revles v. Ind. Comm. of Arizona, 88 Ariz. 67, 352 P.2d 759.

While the record is replete with prior accidents, no evidence was presented by the claimant to show that his present incapacity was causally related to his latest injury, and it is the established compensation law in this State that the Commission is not required to disprove a claim. Waller, supra.

The claimant argues that he was in fact working prior to the accident and that he is presently unable to do so, therefore, he is entitled to an award. Nowhere did the claimant present any medical or other corroborating evidence in support of his allegations,

"When medical opinions, based on matters peculiarly within the realm of scientific knowledge, are uncontroverted, such opinions cannot be arbitrarily re-

jected by the Commission." Revles, supra.

This case does not bring before us the question as to what caused the disability, but rather is there any disability. In Tatman v. Provincial Homes, 94 Ariz. 165, 382 P. 2d 573, the issue of causation was presented. Tatman fell off a scaffold and while suffering no permanent physical disabilities, the examining doctors thought it necessary to refer him to a board of psychiatrists. The psychiatrists found Tatman had suffered a fundamental character change which they directly related to the accident and recommended an award. We held that a claimant who is injured in the scope of his employment is entitled to an award until he is cured or his condition becomes stationary, and if the injury caused a disabling mental disease, he is entitled to the same benefits as if it were a physical incapacity. The evidence was that the claimant in Tatman was unemployable.

The question here involves the weight to be given the medical testimony in the absence of any contrary evidence. Seven different doctors conducted numerous examinations and all found the claimant's condition to have become stationary with no residual effects. There was no affirmative evidence of any kind offered by the claimant to substantiate his claim. There was no medical testimony to evidence aggravation of any pre-existing physical disabilities. Since the Tatman case involved a question of causation and this case a question of uncontradicted medical testimony, the two are distinguishable.

We find no evidence in the record that was brought before the Industrial Commission from which they could reasonably have concluded that the exhaustive medical testimony was in error. All of the medical findings indicated there was no residual physical disability.

The findings of the Industrial Commission, as trier of the facts, must be sustained if the Commission's findings are reasonably supported by the evidence, Magma Copper Co. v. Ind.Comm., 96 Ariz.

341, 395 P.2d 616; Phelps Dodge Corporation, Morenci Branch v. Ind. Comm., 90 Ariz. 248, 367 P.2d 270; Revles, supra.

The evidence supports the award and findings of the Commission and they are hereby affirmed. The judgment of the Court of Appeals, Div. One is vacated.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.